**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICKY D. JONES, | } | |
|     *Plaintiff* | } | |
| v. | } | CIVIL ACTION NO. H-04-3642 |
| | } | |
| ENTERGY GULF STATES INC., | } | |
|     *Defendant.* | } | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this employment discrimination case is Defendant Entergy Gulf States Inc.'s ("Entergy") motion for summary judgment (Instrument No. 15). Plaintiff Ricky D. Jones ("Jones") claims that Entergy discriminated against him on the basis of race when it terminated his employment. Entergy moves for summary judgment on the basis of, *inter alia*, Plaintiff's inability to show that race played a motivating factor in its decision to terminate him. After reviewing the facts and law, it is **ORDERED** that the motion is **GRANTED**.

**I.  RELEVANT FACTS**

Entergy is in the business of providing electric power to commercial and residential consumers. To conduct its business, Entergy installs electric meters that measure how much electricity a consumer has used. Employees of Entergy, designated as Electric Meter Service Installers, are responsible for various types of electrical meter service functions, including disconnecting and reconnecting electrical service and installing and removing different types of locks for tamper protection. Lee Aff. ¶ 3.

Jones went to work for Entergy as an Electric Meter Service Installer at the end of June, 2003. Id. at ¶ 7. He was supervised by two Utility Foremen, Sal Savarino (Hispanic) and Gordon McCabe (Caucasian). Id. at ¶ 3. Plaintiff's direct supervisor was Savarino. Savarino Aff. at ¶ 3. Both Savarino and McCabe reported to Mobile Data Dispatching Supervisor William Lee (African-American). Lee Aff. at ¶ 2. Lee, in turn, reported to Distribution Dispatch Manager

Gerald Jones (African-American).  At all times relevant to this lawsuit Plaintiff was an employee at will.

Entergy's summary judgment evidence reveals that Plaintiff was repeatedly cited and counseled for safety violations. A summary of the evidence reveals that: (1) on 24 October 2003, Jones was cited for multiple safety violations, Lee Aff. ¶ 9, Lee Audit Notes dated 10/24/03 (Instrument 15, Ex. 10); (2) in December 2003, Jones's probationary period was extended because of safety concerns,[1] see Installer 3 Month Probation Extension dated 12/5/03 (Instrument No. 15, Ex. 7), Savarino Aff. ¶ 3; (3) on 5 March 2004, Jones was counseled about safety, Savarino Aff. ¶ 7; and (4) on 16 March 2004, Jones was again cited for safety violations. McCabe Aff. ¶ 4.

After the March 16 audit, a panel of Entergy employees, including two African-Americans, decided that Jones's employment should be terminated.  Discussing the decision to terminate Jones's employment, Supervisor Lee, a member of the panel, observed that, "of the nine employees audited, Ricky Jones was the only employee who: (1) was found to have committed more serious violations relating to electrical voltage, in addition to failure to display his safety cone; (2) had failed to fill out his daily safety assessment form; and (3) had previously been counseled, on an individual basis, about issues relating to electrical voltage." Lee Aff. ¶ 14.

Shortly after his termination, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission, and thereafter, the instant lawsuit.

## II. APPLICABLE LAW

### A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

---

[1] Entergy's policy is for new Electric Meter Service Installers to complete a six month probationary period before becoming subject to Entergy's collective bargaining agreement with the International Brotherhood of Electrical Workers AFL-CIO Local 2286.

477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs

3

and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

**B. Title VII**

To establish a prima facie disparate treatment case under Title VII, plaintiff must show that he: "(1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) . . . that others similarly situated were treated more favorably." Okoye v. Univ. of Tex. Houston Health Science Center, 245 F.3d 507, 512-513 (5th Cir. 2003) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999)). "Only a minimal showing is necessary" to satisfy these four elements and create a presumption of discrimination. Bauer v. Albemarle, 169 F.3d 966, 967 (5th Cir. 1999); see also, Nichols v. Loral Cought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) ("to establish a *prima facie* case, plaintiff need only make a very minimal showing").

A plaintiff who succeeds in making out a *prima facie* case of race discrimination shifts the burden to the defendant to articulate some legitimate reason for the adverse employment decision. McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973). If defendant articulates such a reason, plaintiff must introduce evidence tending to show either (1) that it is false and race was the real

4

reason *or* (2) that the motivating factor for the decision was plaintiff's protected status. Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005).

### III. APPLICATION OF LAW TO THE FACTS

In its motion, Defendant argues that Plaintiff has failed to present a *prima facie* case of race discrimination. Specifically, Defendant claims that Plaintiff cannot show he was qualified to be an Electric Meter Service Installer. The Court agrees that Plaintiff has failed to present a *prima facie* case, but for a different reason than the one raised by Defendant.

Defendant's argument that Plaintiff fails the qualification prong of the *prima facie* case requirement is unconvincing for two interrelated reasons. First, Plaintiff was employed as an Electric Meter Service Installer for almost nine months before his termination, indicating that Plaintiff was capable of performing the bare minimum of tasks assigned to him. Second, if the Court were to find Plaintiff unqualified for the same reasons Defendant maintains it terminated him, it would short circuit the burden shifting framework that has governed employment discrimination cases since the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824 (1973).

The Court does find, however, that Plaintiff has failed to state a *prima facie* case of disparate treatment in violation of Title VII because he has not shown that other similarly situated employees were treated more favorably. Plaintiff contends that several Caucasian workers were subject to lesser degrees of discipline for similar violations. However, a close review of the evidence reveals this not to be the case. Plaintiff unites three traits that are unlike the employees he compares himself to. Specifically, Plaintiff's violations occurred shortly after he was lectured on the importance of safety, while on his probationary period, and concerned electrical voltage. See McCabe Aff.; Savarino Aff.; Lee Aff. These differences were relied on by the panel that chose to terminate Jones, and are fatal to his claims here.

Even if this Court were to find that Plaintiff has successfully pled a prima facie case, it would, nevertheless, have to conclude that he has not successfully rebutted Entergy's articulated

5

legitimate reason for firing him. The question is whether Plaintiff has met his burden of introducing evidence from which a jury could conclude that, despite its articulated legitimate reason, Defendant was motivated by discriminatory animus. Plaintiff argues that a jury could so infer based on (1) Plaintiff's termination shortly after being ranked as a "contributor" in his latest performance review and (2) Entergy's failure to similarly fire Caucasian employees who violated safety regulations. After considering these arguments and their evidentiary support, the Court is convinced that no rational jury could conclude by a preponderance of the evidence that Defendant was motivate by racism when it fired Jones.

A cursory examination of Plaintiff's 5 March 2004 Performance Review (Instrument No. 15, Ex. 16) reveals that, of the four options available, "contributor" is the second to lowest ranking. Jones's performance was not judged to be "unsatisfactory", the worst score he could have received, but the review is weak evidence that Savarino was happy with Jones's performance. Moreover, because the review was completed before the surprise audit that uncovered further safety violations, it is an inaccurate reflection of the information before the panel that chose to terminate Jones's employment.

Jones's claim that Caucasian employees were given better treatment is unconvincing for the reasons already stated. Therefore the treatment they received at the hands of management is of little or no evidentiary value.

## IV. CONCLUSION

For the aforementioned reasons the Court **ORDERS** that defendant's motion is **GRANTED**. Plaintiff's claim is **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, this 9th day of March, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE